IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

XEZAKIA ROUSE,

    Plaintiff,

v.                                                                               CV 10-1094 JAP/GBW

C.O. CRUZ,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion for Summary Judgment, *doc. 95*. Being fully advised by the parties, *see docs. 101, 118, 126*, I recommend that the Court grant summary judgment in favor of the Defendant.

**I.**     **BACKGROUND**

On November 16, 2010, Plaintiff, then an inmate at the Bernalillo County Metropolitan Detention Center (BCMDC), filed a complaint under § 1983 against BCMDC; Bernalillo County, New Mexico; and Correctional Officer Adrian Cruz,[1] an employee of BCMDC. *Doc. 1.* Plaintiff's claims arise out of a single event that occurred on October 12, 2012.[2] Plaintiff, a black male, alleges that on that day Defendant Cruz asked the other inmates in Plaintiff's unit "if they wanted to 'see a disappearing act'"

---

[1] Plaintiff's original complaint identified Defendant only as Correctional Officer Cruz. *Doc. 1.* As there are multiple officers named Cruz at BCMDC, this Court ordered Plaintiff to specify the particular officer to whom he was referring. *Doc. 20.* Plaintiff identified C.O. Adrian Cruz. *Doc. 21.*

[2] There is some dispute over the date of this incident. Plaintiff's Complaint says that it occurred on October 12, 2010, *doc. 1* at 2, but his grievance states that it occurred on October 14, 2010, *doc. 95*, ex. C. The precise date is not relevant to Plaintiff's claims or Defendant's defenses.

1

and then "flicked on and off [Plaintiff's] cell lights (approx. 10-13 times) while [Plaintiff] was standing in the window of [his] cell." *Id*. at 2. Defendant Cruz allegedly pointed and laughed at Plaintiff and encouraged other inmates to laugh at him. *Id*.

Plaintiff claims that because of this incident, he now suffers from Post-Traumatic Stress Disorder (PTSD). *Doc. 10* at 1. He also alleges that Defendant told the other inmates that Plaintiff "snitched" by filing this lawsuit. *Doc. 9* at 1; *Doc. 101* at 1-2. As a result, he "has been abused by other inmates and denied the rights to shower and use the telephone for his time out while C.O. Cruz worked in the unit Plaintiff was in (after this action began)." *Doc. 10* at 1. Lastly, he states that "psychiatric services were denied while Plaintiff was in the unit C.O. Cruz was monitoring." *Id*.

Plaintiff brought claims under the First, Eighth, Ninth, and Fourteenth Amendments. *Doc. 1* at 4-6; *Doc. 10* at 1-2. As relief, he requested (1) "any exemplary or punitive damages the Court deems necessary;" (2) "any other damages the Court deems applicable;" (3) $2,000,000 in compensatory damages; (4) release from BCMDC; (5) an "official written and televised apology from all involved parties;" and (6) "any court fees or attorney fees incurred by the processing of this motion." *Doc. 1* at 7.

The Court dismissed Defendants BCMDC and Bernalillo County from this action on January 1, 2011 because Plaintiff failed to plead any facts that would support supervisory liability under 42 U.S.C. § 1983. *Doc. 7*. It also dismissed Plaintiff's First, Ninth, and Fourteenth Amendment claims because they were all predicated on

Plaintiff's allegations that Defendants failed to respond to his pre-grievance, which did not give rise to valid constitutional claims.  *Doc. 7 at 3.*

Plaintiff then moved for leave to amend the complaint to add claims under the Equal Protection Clause of the Fourteenth Amendment and the Ninth Amendment on the basis of Defendant Cruz's alleged racial discrimination.  *Doc. 10 at 1-2.*  The Court granted the motion but dismissed the Ninth Amendment claim for failure to state a valid claim.  *Doc. 60 at 3-4.*  Plaintiff's second motion for leave to amend the complaint sought to add failure to train claims against various BCMDC and Bernalillo County officials.  *Doc. 51.*  The Court denied that motion, finding that the proposed amendments were wholly conclusory and lacking in any factual support and were therefore futile under Federal Rule of Civil Procedure 15(a)(2).  *Docs. 60 & 71.*  Thus, Plaintiff's remaining claims are his Eighth and Fourteenth Amendment claims against Defendant Cruz, arising out of the alleged discriminatory incident described above.

Defendant Cruz moved for summary judgment on September 6, 2012.  *Doc. 95.*  His motion makes two arguments: (1) that he has qualified immunity from Plaintiff's claims, and (2) that Plaintiff's suit is barred by 42 U.S.C. § 1997e(e), the Prison Litigation Reform Act's (PLRA) physical injury requirement.  *Id*.  In his reply to Plaintiff's response, Defendant also argued that Plaintiff failed to exhaust administrative remedies as required by § 1997e(a) of the PLRA.  *Doc. 118 at 8-10.*

3

## II.  ALLEGATIONS AND DEFENSES PROPERLY BEFORE THE COURT

Both Plaintiff and Defendant have engaged in unconventional briefing in this case.  Plaintiff has made additional allegations not contained in his original complaint or his amended complaint in the form of "addenda" to his complaint.  *See docs*. 5 & 9.  Defendant has raised the defense of failure to exhaust in his reply to Plaintiff's response to his motion for summary judgment rather than in the original motion.  *See doc*. 118 at 8-10.  The Court concludes that both Plaintiff's extra allegations contained in the addenda and Defendant's exhaustion argument are properly before the Court and may be considered by the Court in deciding the instant motion.

### A.  The Court may consider the allegations contained in Plaintiff's addenda

Defendant argues that Plaintiff's allegations are limited to those set forth in his original complaint and "First Amended Complaint," which Defendant defines as Plaintiff's "Request to Proceed with Two or More Counts Addendum to Complaint."[3] *Doc. 118* at 5; *see also doc. 95* at 3-4.  He asserts that Plaintiff's addenda are not proper pleadings and that the additional allegations contained within them, relating to the alleged assault by other inmates and the denial of access to mental health services, the shower, and telephone, are not properly before the Court.  *Doc. 118* at 5; *Doc. 95* at 12-13. Defendant therefore concludes that Plaintiff's only live claims are that Defendant Cruz violated the Eighth and Fourteenth Amendments by turning the lights in

---

[3] The Court treated that document as a motion for leave to amend the original complaint and granted it. *Docs*. 60 & 71.

Plaintiff's cell on and off and mocking Plaintiff, thereby causing Plaintiff to develop PTSD.  *Doc. 118* at 5; *Doc. 95* at 3-4.

The Court disagrees for two reasons.  First, Plaintiff's First Amended Complaint as defined by Defendant includes these additional allegations.  It states that "Plaintiff has been abused by inmates and denied rights to shower and use the telephone for his time out while C.O. Cruz worked in the unit the plaintiff was in (after this action began), also psychiatric services were denied while plaintiff was in the unit C.O. Cruz was monitoring."  *Doc. 10* at 1.  Because Plaintiff proceeds *pro se*, the Court construes his pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Although Plaintiff fails to expressly connect these facts to his Eighth and Fourteenth Amendment claims, it is clear he intends that they supplement those claims.

Second, Plaintiff's amended complaint is not limited to the allegations in his original complaint and his motion to amend; it also includes the allegations in his two addenda, *docs*. 5 & 9.  The addenda are largely redundant, but they do add one new allegation: that Plaintiff has been "labeled as a 'snitch' among inmates" because "Officer Cruz keeps telling inmates about the lawsuit."  *Doc. 9* at 1.  Because the Court has already relied on these addenda when construing Plaintiff's claims in prior orders, *see doc. 7* at 2, they are now part of the record and are therefore properly before the Court.

"[I]f the court can reasonably read the pleadings to state a valid claim on which the [pro se] plaintiff could prevail, it should do so despite the plaintiff's failure to cite

5

proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  Reading the complaint, motion to amend, and addenda in light of this instruction, the Court has determined that Plaintiff asserts violations of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment based on (1) the alleged incident in which Defendant turned the lights on and off and mocked Plaintiff; (2) denial of access to a shower and telephone by Defendant; (3) denial of access to mental health services by Defendant; and (4) Defendant's alleged labeling of Plaintiff as a snitch and the resulting assault by other inmates.

### B.  The Court will consider Defendant's exhaustion defense

In his motion, Defendant argues that he is entitled to summary judgment for two reasons: (1) he has qualified immunity from Plaintiff's claims, and (2) Plaintiff's suit is barred because Plaintiff failed to satisfy the PLRA's physical injury requirement.  *Doc. 95*.  In his reply to Plaintiff's response to that motion, Defendant raised a third defense: that Plaintiff's suit is barred because he failed to exhaust administrative remedies as required by the PLRA.

"[W]hen a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment," either "the nonmoving party should be granted an opportunity to respond" in a surreply or the court should refrain from relying on the new materials and arguments.  *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159,

6

1164 (10th Cir. 1998). Here, Plaintiff, without moving for leave to file a surreply, responded to Defendant's reply. *See doc. 126*. The Court has considered Plaintiff's surreply, so he has had an opportunity to respond to Defendant's exhaustion defense. Consequently, the Court will consider that defense along with Defendant's two original defenses.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. The summary judgment standard

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol*

*Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id*. at 257.

### B. **Plaintiff has failed to exhaust administrative remedies for his claims of assault and denial of access to mental health services, showers, and the telephone**

Defendant argues that Plaintiff has failed to exhaust administrative remedies, as required by the PLRA, for his allegations of assault by other inmates due to Defendant's labeling him a snitch, and denial of access to mental health services, showers, and the telephone.  *Doc. 118* at 8.  This Court agrees.

Section 1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that this provision requires "proper exhaustion" – that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  Prisoners must exhaust all available remedies even if those remedies "appear to be futile at providing the kind of remedy sought."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  When a prisoner properly exhausts some, but not all, of the claims asserted in his complaint, a court should dismiss the unexhausted claims but proceed with the exhausted ones. *Jones v. Bock*, 549 U.S. 199, 220-24 (2007).

Plaintiff has not exhausted administrative remedies for the claims arising out of the alleged assault by other inmates and the alleged denial of access to mental health services, the shower, and telephone.  Plaintiff has filed only one grievance relevant to this case. *See doc. 118*, ex. A; *doc. 95,* ex. C.  That grievance, filed on November 18, 2010, states in its entirety that "[o]n Oct. 14th C.O. Cruz racially discriminated and abused his power by asking other inmates if wanted to see a 'disappearing man act.'  He then pointed at my room and turned my lights on and off about 10-13 times while laughing

9

with other inmates. I am a Black male and I have been teased by inmates after that just for being Black."[4] *Doc. 95*, ex. C (original wording). It says nothing about the alleged assault or denial of access to healthcare, showers, or the telephone. Plaintiff does not make those allegations until his second addendum to his complaint, filed on March 3, 2011. *Doc. 9*. In that document, he dates the denial of mental health services to January 31, 2011, and the labeling of Plaintiff as a snitch to February 2, 2011. *Id*. Thus, these allegations all relate to incidents which occurred months after Plaintiff filed his grievance on November 18, 2010.

"A grievance . . . cannot exhaust administrative remedies for claims based on events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Allowing a Plaintiff to proceed with such complaints undermines the purpose of the PLRA's exhaustion requirement – to alert prison officials to the problem and give them an opportunity to fix it before the courts get involved. *Id*.; *see also Woodford*, 548 U.S. at 93-94. Thus, because Plaintiff failed to file a grievance for his

---

[4] Plaintiff withdrew this grievance on November 23, 2010. *Doc. 95*, ex. C. The grievance contains a note purportedly written by a staff member that states that the "[i]ssue with Officer Cruz has been resolved because he no longer [] worked in F8. As far as the discrimination he displayed towards my race that is being taken care of by my attorney." *Id*. Defendant does not argue that Plaintiff has failed to exhaust his administrative remedies for his equal protection and Eighth Amendment claims based upon the alleged discriminatory incident. Because exhaustion is an affirmative defense that must be pled by Defendant, *Jones v. Bock*, 549 U.S. 199 (2007), this Court need not determine whether Plaintiff's grievance, given its withdrawal, constitutes exhaustion of administrative remedies as to those claims.

10

claims of assault and denial of access to mental health services, showers, and a telephone, those claims remain unexhausted and barred by the PLRA.

Plaintiff does not contest Defendant's assertion that he failed to exhaust administrative remedies. *See doc. 126*. While Plaintiff casts general aspersions on the affidavit of Philip Quintana which establishes the lack of administrative grievances filed by Plaintiff, Plaintiff never claims to have filed, or have attempted to file, any additional grievance. *See id*. (stating that "Quintana's affidavit isn't exactly true" and suggesting that Defense counsel may have "coached" Quintana). Of course, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Plaintiff's vague, conclusory statements are insufficient to raise a genuine material factual dispute and Defendant is entitled to summary judgment as to exhaustion of these claims.

### C. **Defendant has qualified immunity from damages for the remainder of Plaintiff's claims**

Plaintiff's remaining properly exhausted claims are (1) his Fourteenth Amendment equal protection claim and (2) his Eighth Amendment claim based on Defendant's alleged mocking of Plaintiff's race. Both of these claims arise out of the same incident in which Defendant allegedly asked the other inmates if they wanted to see a "disappearing act" and then proceeded to turn the lights in Plaintiff's cell on and off ten to thirteen times. *Doc. 1* at 2. Plaintiff claims that Defendant pointed and laughed at Plaintiff during this display, and encouraged other inmates to also laugh at

11

Plaintiff.  *Id*. at 2, 10, 13.  The Court finds that Plaintiff's allegations, even if accepted as true, do not make out violations of the Eighth and Fourteenth Amendments, and that Defendant therefore has qualified immunity from both of these claims.

### i. Qualified immunity standard

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The immunity extends only to damages claims; it does not apply to claims for declaratory relief.  *Hammons v. Saffle*, 348 F.3d 1250, 1257 n.1 (10th Cir. 2003).  "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff who must clear two hurdles to defeat the defendant's motion.  The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity."  *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted).

### ii. Eighth Amendment claim

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."  U.S. Const. amend. VIII.  In the context of prisons, the Eighth Amendment requires that inmates are provided "humane conditions of confinement."  *Farmer v. Brennan*, 511 U.S. 825 (1994).

It does not, however, mandate "comfortable" prisons. *Id*. at 832.  Thus, "the Court will find an Eighth Amendment violation only when the alleged deprivation is objectively, sufficiently serious, and the prison official acts with deliberate indifference to inmate health and safety." *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (internal quotations omitted).  A condition is "sufficiently serious" if it "pos[es] a substantial risk of serious harm to inmate health and safety." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (citing *Farmer*, 511 U.S. at 834).

The harassment alleged by Plaintiff does not meet this high standard.  In *Adkins*, the Tenth Circuit addressed analogous facts in the context of sexual harassment.  The plaintiff inmate in that case alleged that a prison officer commented on "her body, his own sexual prowess, and his sexual conquests." *Id*. at 1035.  She also claimed that the officer entered her cell while she was sleeping and "stood over her bed looking at her." *Id*. at 1036.  When she awoke, he commented, "By the way, you have nice breasts." *Id*. The court held that the officer's behavior, while "outrageous and unacceptable," did not amount to "the sort of violence or threats of violence cognizable" under the Eighth Amendment. *Id*. at 1037.  The Tenth Circuit reaffirmed this holding in the more recent case of *Norton v. City of Marietta, Okla.*, 432 F.3d 1145 (10th Cir. 2005).  There an inmate alleged that a police officer violated the Eighth Amendment by making disparaging remarks about him in front of prison personnel. *Id*. at 1155.  The Court found that such remarks "clearly do not give rise to a constitutional violation." *Id*.

As in *Adkins* and *Norton*, the alleged harassment in this case is insufficiently serious to support a claim under the Eighth Amendment. Plaintiff describes a single incident of verbal harassment that involved no threats of harm or violence. While the alleged conduct is reprehensible, it posed no threat to Plaintiff's health or safety. Plaintiff's assertion that he has developed PTSD as a result of the incident does not prove otherwise. While psychological harm can give rise to an Eighth Amendment claim, it must result from conduct that is objectively likely to result in substantial harm to the inmate, such as labeling the inmate a snitch.[5] *See Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001). Because the facts as alleged by Plaintiff do not demonstrate an Eighth Amendment violation, Defendant has qualified immunity from this claim.

### iii. Fourteenth Amendment claim

"Racial . . . discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under 42 U.S.C. § 1983." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1243 (10th Cir. 2000). However, racially derogatory language by itself does not violate the Fourteenth Amendment. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (finding that a sheriff who laughed at and threatened to hang an inmate did not violate the Constitution); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (finding that racial epithets, without more, do not amount to an equal

---

[5] As discussed above, Plaintiff has failed to exhaust administrative remedies for the claim that Defendant labeled him a snitch. The remaining allegations relate only to the alleged incident of racial discrimination.

14

protection violation); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").

The Eighth Circuit addressed a situation remarkably similar to the incident described by Plaintiff in *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002). The inmate in that case alleged "that a guard ridiculed the color of his palms and told him to smile so that he could be seen in the dark." *Blades*, 302 F.3d at 805. The court held that "[t]hough these words are thoroughly offensive, and it is particularly reprehensible for a government official to utter them in the course of his official duties, . . . the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment." *Id*.

The Court agrees with this analysis. One lone incident of offensive mockery is insufficient to support a claim under the Fourteenth Amendment. Defendant is therefore entitled to qualified immunity from this claim.

### D. **Plaintiff's claims for injunctive relief also fail**

In addition to damages, Plaintiff seeks injunctive relief. He requests (1) an "official written and televised apology from all involved parties," *doc. 1* at 7, and (2) that "all future medication and hospital visits stemming from this situation be paid for as treatment will be needed when plaintiff leaves jail," *doc. 5*. Because qualified immunity does not extend to claims for injunctive relief, *Hammons*, 348 F.3d at 1257 n.1, those

claims are subject to the regular Rule 56 summary judgment standard. However, as described above, Plaintiff's allegations, even if accepted as true, do not support claims under either the Eighth or Fourteenth Amendment. As such, these claims are subject to summary judgment even where qualified immunity is inapplicable.

## IV. CONCLUSION

Because Plaintiff failed to file grievances regarding his claims based on assault by other inmates and denial of access to mental health services, showers, and a telephone, those claims are barred by the PLRA's exhaustion requirement. Plaintiff's remaining Eighth and Fourteenth Amendment claims also fail because his allegations, even if accepted as true, do not support a finding of a constitutional violation. Therefore, I recommend granting Defendant's motion for summary judgment, *doc. 95*.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**